IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BELLFORT ENTERPRISES, INC. | § | |
| | § | |
| v. | § | Civil Action No. 06-257 |
| | § | |
| PETROTEX FUELS, INC. | § | |

### MEMORANDUM AND ORDER

Summary judgment was previously granted to Defendant and Counterclaimant PetroTex Fuels, Inc. ("PetroTex"). Pending before the Court now are PetroTex's claims for damages and attorneys' fees against Plaintiff and Counter-defendant Bellfort Enterprises, Inc. ("Bellfort") and Third-Party Defendant Soon H. Yim ("Yim"). This Memorandum and Order will serve to set forth the Court's reasoning as to summary judgment, as well as damages and attorneys' fees. The Court's Minute Order of December 28, 2007 is, accordingly, **VACATED**.

### I. BACKGROUND

Bellfort and PetroTex entered into a dealer marketing contract (the "Contract") providing for the sale of branded motor fuel by PetroTex, a wholesaler, to Bellfort, a retail dealer, which would in turn sell the fuel to the public at a gas station in Houston. The Contract, which was executed in August 2002, also contained a continuing guaranty by Yim, the sole shareholder of Bellfort, of Bellfort's obligations under the Contract. PetroTex and Bellfort also executed a letter agreement ("Letter Agreement) dated December 27, 2002, pursuant to which PetroTex advanced Bellfort $28,800 as a rebrand image allowance; that is, money to be used for, e.g., signage to reflect the particular brand of gasoline being sold.

-1-

The parties performed under the Contract and Letter Agreement for more than three years. In October, 2005, the business arrangement between PetroTex on one hand and Bellfort and Yim ended, for reasons that the parties dispute. Bellfort filed suit in state court against PetroTex, and PetroTex removed the case to this Court because a federal question was implicated under the Petroleum Marketing Practices Act ("PMPA"). Bellfort alleged, among other things, that PetroTex had breached the Contract. PetroTex's counterclaim alleged, among other things, that Bellfort had committed an anticipatory repudiation of the Contract and had breached the Letter Agreement.

## II. SUMMARY JUDGMENT

PetroTex filed a 131-page motion for summary judgment, with 48 exhibits. (Dkt. No. 62 and 63.) PetroTex's submissions presented an exceptionally strong showing that there was no genuine issue as to any material fact – with respect to both PetroTex's claims and Bellfort's. FED. R. CIV. P. 56(c). Bellfort and Yim did not seek summary judgment. They did, however, file a response, with affidavits, to PetroTex's motion. (Dkt. No. 70 and 68.)

Their response was, however, a curious one. It offered no competent summary judgment evidence to controvert PetroTex's motion, but made for the first time the argument that the Contract – the alleged breach of which had led Bellfort to initiate this litigation – was invalid and unenforceable. The law is clear that, in responding to PetroTex's motion and its evidence showing entitlement to summary judgment, Bellfort and Yim had the burden to submit evidence of countervailing facts. *Little v. Liquid Air Corp.*, 939 F.3d 1293, 1299 (5th Cir.1991) ("If the movant satisfies this burden, the burden shifts to the nonmovant to demonstrate that summary judgment is inappropriate.")

Because Bellfort and Yim did not offer competent summary judgment evidence as to Bellfort's claims against PetroTex and because PetroTex did show the absence of any genuine issue as to any material fact, summary judgment is appropriate in favor of PetroTex. Likewise, because no competent summary judgment evidence was offered in opposition to PetroTex's third party complaint against Yim, and because PetroTex again made a showing sufficient under Rule 56, summary judgment in favor of PetroTex is again appropriate.

As to PetroTex's counterclaim and third-party complaint, Bellfort and Yim seek to avoid summary judgment with the argument that the Contract does not reflect a "mutuality of the parties or a meeting of the minds of the parties." Their argument is unpersuasive. Beyond that, Bellfort's earlier filings, including its first amended complaint (Dkt. No. 31), as to the validity and enforceability of the Contract constitute judicial admissions that are binding. *See, e.g., Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) ("'Factual assertions in pleadings are . . . judicial admissions *conclusively* binding on the party that made them.' Facts that are admitted in pleadings 'are no longer at issue.'" (citations omitted, emphasis in original)).

In its first amended complaint, Bellfort stated: "The parties entered into a Dealer Marketing Contract that became effective August 1, 2002, Pursuant to the terms of the Dealer Marketing Contract, PetroTex is to supply Bellfort with Phillips Petroleum trademark signs, credit card imprinters, and sell Bellfort Phillips Petroleum branded motor fuel for resale to Bellfort's customers."

Accordingly, summary judgment as to liability is appropriately entered for PetroTex on its counterclaim against Bellfort, and on PetroTex's third-party complaint against Yim.

### III. DAMAGES

In orally granting PetroTex summary judgment on liability, the Court reserved any ruling on the amount of damages to which PetroTex is entitled. That issue was then comprehensively briefed and argued by the parties.

Bellfort argues that PetroTex is entitled to no damages because the Contract was illusory. Specifically, Bellfort contends that the Contract imposes obligations on Bellfort, but gives PetroTex opportunities to disavow the Contract. Initially, the Court would note that this argument is inappropriate at this stage. Liability has already been determined, and such an argument should have been advanced when liability was being resolved. Neither Bellfort nor Yim made any reference to the Contract being illusory in any filings made with this Court prior to summary judgment having been orally awarded to PetroTex. There was, in particular, no reference to the argument in the response filed to PetroTex's motion for summary judgment.

Secondly, as already noted, Bellfort has judicially admitted the validity and enforceability of the Contract. Third, on the merits, Bellfort and Yim misapprehend the theory of mutuality of obligations under Texas law. There is no requirement that parties to a contract have similar obligations. *See Air America Jet Charter, Inc. v. Lawhon*, 93 S.W.3d 441, 444 (Tex. App.–Houston [14th Dist.] 2002). Nor is there anything inappropriate about certain provisions of a contract being more favorable to one party or another. Indeed, that is frequently the case. When consideration is forthcoming from both sides, there is no impediment to the formation of a valid and enforceable contract. *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642 (Tex. 1994). In this instance, the parties had not only entered an agreement that called for significant obligations on both sides, but they

had each performed under the Contract for more than three years, with PetroTex supplying Bellfort with a minimum of 75,000 gallons of motor fuel per month.

As to the amount of damages, the parties have stipulated that PetroTex is entitled to receive $11,545.22 which represents monies owed PetroTex on PetroTex's last invoice, dated November 9, 2005 and an additional $24,380.00 which represents monies owed by Bellfort pursuant to the Letter Agreement. The parties do dispute the measure of damages for the remainder of the Contract, a period of twenty-one years and nine months, assuming that PetroTex did not terminate the Contract, as it could do after fifteen years, and then again five years later.

The Court finds and holds that the appropriate measure of damages is found in § 2.708(b) of the Texas Business and Commerce Code. Section 2.708 provides the remedy for a seller who has incurred damages for non-acceptance or repudiation by a buyer. Subsection (a) sets forth the standard as "the difference between market price at the time and place for tender and the unpaid contract price . . . ." Subsection (b) provides, however, that:

> If the measure of damages provided in Subsection (a) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performances by the buyer, together with any incidenteal damages provided in the chapter (Section 2.710), due allowances for costs reasonably incurred and due credit for payments or proceeds or resale.

In this instance, subsection (a) is not a suitable standard for a number of reasons, including the inherent inability to determine market price over a period of more than two decades, and because the Contract defined PertroTex's profit as two cents per gallon irrespective of the market price. Instead, Subsection (b) is applicable. *Nobs Chemical, U.S.A., Inc. v. Koppers Co., Inc.*, 616 F.2d 212 (5th Cir. 1980). The Contract provided that PetroTex was entitled to two cents per gallon profit on

each gallon sold for the life of the Contract. Mitigation is not relevant because PetroTex was what is referred to as a "jobber" – it did not acquire the motor fuel unless and until it had a purchaser, such as Bellfort. *Id.*[1]

The actual calculations under this approach have not been challenged by either Bellfort or Yim. According to PetroTex's unrefuted arithmetic, the present value of its lost profits is $258,977.79. The grand total of the amount to which PetroTex is entitled is $294,777.97.

## IV. ATTORNEYS' FEES

There are two theories under which PetroTex is entitled to attorneys' fees. The first is the usual provision under Texas law for recovery of fees on a successful breach of contract claim. Tex. Bus. & Com. Code § 38.001(8). Secondly, the Court has discretion to award attorneys' fees under the Petroleum Marketing Practices Act. 15 U.S.C § 2805(d)(3). The Court finds and holds that PetroTex is entitled to attorneys' fees under both provisions and, specifically finds Belfort's claims under the PMPA to be frivolous. *Id.*

The Court has reviewed the time logs provided by PetroTex's counsel. Although the amount sought is large (almost $200,000), it does not seem disproportionate to the effort expended. PetroTex's counsel did have to brief extensively, and prepare for hearings on, arguments from

---

[1] JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 7-10 (5th ed. 2006) ("The 'jobber' is yet another kind of seller who can look to 2-708(2) [2.708(b) in Texas] for recovery of lost profits. By 'jobber' we refer to a seller who satisfies two conditions. First, it is a seller who never acquires (or never manufactures) the contract goods. Second, its decision not to acquire those goods after learning of the breach is commercially reasonable under 2-708(1) [2.708(a) in Texas] will place it in the same position as performance only by chance. Since the jobber has no goods on hand to resell, seller cannot even resell on the market at the time of tender and so recoup the amount necessary to make it whole by adding such proceeds to its 2-708(1) [2.708(a) in Texas] recovery. Thus the only recovery which grossly approximates the 'jobber's' economic loss is a recovery based on lost profits.").

Bellfort that changed dramatically over the course of the litigation (e.g., from a claim for breach of contract to a claim of contract invalidity), and were raised out of time (e.g., Bellfort's theory that the contract was illusory was not raised until oral argument on damages when it should have been advanced no later than the summary judgment stage).

The Court will ask PetroTex's counsel to submit a final request for fees through today's date. The request for a $30,000 conditional award of attorneys' fees if appeal is filed is also appropriate and not disproportionate.

### V. CONCLUSION

The Court **GRANTS** summary judgment to PetroTex as to all claims for relief brought by Bellfort. The Court also **GRANTS** summary judgment to PetroTex on its counterclaim against Bellfort and as its third-party complaint against Yim, and **AWARDS** damages and attorneys fees to PetroTex as set forth herein. PetroTex shall also submit a current account of fees and expenses incurred.

The parties shall confer and agree on a proposed Final Judgment.

**IT IS SO ORDERED.**

Signed this 31st day of February 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT COURT